**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
S. Jason Teele, Esq. (SJT 7390)
Vincent A. D'Agostino (VAD 0120)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| U.S. EAGLE CORPORATION, *et al.*,[1] | Case No. 11- 10392(NLW) |
| Debtors. | Joint Administration Requested |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER**
**SECTION 105, 361, 362 AND 363 OF THE BANKRUPTCY CODE APPROVING**
**THE USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION**
**AND SETTING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

U.S. Eagle Corporation, *et al.*, the above-captioned debtors and debtors-in-possession (the "**Debtors**"), submit this motion (the "**Motion**") for entry of an interim order pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Fed.R.Bankr.P. 4001 (i) approving the use of cash collateral, (ii) providing adequate protection, and (iii) setting a final hearing pursuant to Fed.R.Bankr.P. 4001.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors are as follows:  U.S. Eagle Corporation; U.S. Eagle Litho, Inc.; Eagle One Golf Products, Inc.; Julius Realty Corporation; Traffic Control Service, Inc., A Nevada Corporation; Traffic Control Service, Inc., An Arizona Corporation;  and Traffic Control Service, Inc., A California Corporation.

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001.

## RELIEF REQUESTED

2.      By this Motion, the Debtors request an order:

(a)      authorizing the use of Comerica's (as defined below) cash collateral pursuant to the budget attached hereto as **Exhibit A**;

(b)      granting Comerica adequate protection in the form of (i) replacement liens pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code, to the extent Comerica's cash collateral is used by the Debtors and to the extent of any diminution in the value of Comerica's collateral, with the same priority in the Debtors' post-petition collateral, and proceeds thereof, that Comerica held in the Debtors' pre-petition collateral; and (ii) weekly interest payments under the Credit Agreement and Mortgages equal to the contractual rate of interest plus 300 basis points.  Moreover, the Debtors believe that there exists an equity cushion that protects Comerica's interests in these cases; and

(c)      giving notice of and scheduling an interim and final hearing pursuant to Bankruptcy Rule 4001.

3.      Without the immediate use of cash collateral, the Debtors will be unable to pay ordinary and necessary business expenses including, but not limited to, payroll and related obligations, rent, taxes, utilities, amounts owed to vendors and other suppliers of goods and services, insurance, and other costs of administering their estates.  The use of cash collateral as requested herein is therefore critical to preserving the value of the Debtors' estates for all parties-in-interest.

## BACKGROUND

### A.  In General.

4.    On January 6, 2011 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**").

5.    The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases.

### B.  Description Of The Debtors And Their Businesses.

6.    The Debtors' businesses are comprised of three separate and distinct lines of business.  The most significant line of business consists of the sale and rental of traffic control related equipment, such as traffic barricades, crash barrels and message boards, as well as trench shoring equipment and steel plates.  This line of business services customers primarily located in California, Nevada and Arizona.  In addition, the Debtors design and distribute golf course maintenance products to customers located principally in the United States. The third line of business consists of the ownership of certain parcels of commercial real estate in Nevada and California and the rental under a long term operating lease of real property located in Trenton, New Jersey.

7.    U.S. Eagle Corporation ("**U.S. Eagle Corp.**") is a Delaware corporation headquartered in Elizabeth, New Jersey.  U.S. Eagle Corp. is a holding company that owns 100% of the equity interests of each of the other Debtors.

8.    Eagle One Golf Products, Inc. ("**Eagle One**") is a Delaware corporation headquartered in Anaheim, California.  Eagle One is a leading designer and distributor of environmentally friendly, durable and aesthetic products for use on golf courses, resorts, hotels and restaurants.

9.      Traffic Control Service, Inc. (California) ("**TCS California**"), Traffic Control Service, Inc. (Nevada) ("**TCS Nevada**"), and Traffic Control Service, Inc. (Arizona) ("**TCS Arizona**" and, together with TCS California and TCS Nevada, collectively, "**TCS**"), are California, Nevada and Arizona corporations, respectively, with headquarters and operations in those states.  TCS is primarily engaged in the sale and rental of traffic control devices and equipment.

10.     Julius Realty Corporation ("**Julius**") is a New Jersey corporation with a principal place of business in Anaheim, California.  Julius primarily owns and manages various commercial real estate properties, most of which are occupied by TCS, located in Las Vegas, Nevada, Fullerton, California, Sacramento, California, Riverside, California, and Trenton, New Jersey.  The Trenton, New Jersey property is leased to a third party.

11.     U.S. Eagle Litho, Inc. ("**U.S. Eagle Litho**") is a Delaware corporation headquartered in Elizabeth, New Jersey.  U.S. Eagle Litho provides administrative, accounting and other back office services to the other Debtors.

**C.      The Debtors' Management.**

12.     The Debtors' management team is principally comprised of Dawn Thompson, who is the President of Julius and a member of the Board of Directors of U.S. Eagle Corp.; Philip Thompson, who is the President of Eagle One and a member of the Board of Directors of U.S. Eagle Corp.; and James Westphal, who is the former President of TCS and currently a member of the Board of Directors of U.S. Eagle Corp.; and Frank Della Fera, who is the Debtors' Chief Financial Officer.

**D.      The Debtors' Prepetition Capital Structure.**

**(i)      Secured Debt.**

13.     As of the Petition Date, the Debtors owed approximately $16,000,000 to Comerica Bank ("**Comerica**") pursuant to a Credit Agreement dated March 5, 2006, as amended on March 27, 2007, November 30, 2007, November 14, 2008 and February 12, 2010 (the "**Credit Agreement**") and two (2) separate Secured Real Estate Loans respecting

(a) 2180 Pama Lane, Las Vegas, Nevada and (b) 6680 Surrey Street, Las Vegas, Nevada (collectively, the "**Mortgages**").

14.     U.S. Eagle Corp. is the borrower under the Credit Agreement and each of the other Debtors is a guarantor of U.S. Eagle Corp.'s obligations thereunder. Julius is the mortgagor under the Mortgages and each of the other Debtors is a guarantor of Julius' obligations thereunder. As discussed below, all of the Debtors' personal and real property is pledged as collateral to Comerica in connection with the Credit Agreement and Mortgages, respectively.

15.     The following credit facilities are available to the Debtors pursuant to the Credit Agreement:

> Revolving Credit Facility: may be utilized for loans or letters of credit in a maximum principal amount at any one time outstanding equal to the lesser of $7,000,000 and the Borrowing Base;[2]

> Specific Advance Facility: provides for discretionary advances by Comerica to enable the Debtors to acquire equipment to be used in their businesses in a maximum amount of (i) for each advance, 80% of the purchase price of such equipment, and (ii) for all advances, $4,000,000;

> Specific Advance Facility B: provides for discretionary advances by Comerica to enable the Debtors to acquire equipment to be used in their businesses in a maximum amount of (i) for each advance, 80% of the purchase price of such equipment, and (ii) for all advances $4,000,000;

> Specific Advance Facility C: provides for discretionary advances by Comerica to enable the Debtors to acquire equipment to be used in their businesses in a maximum amount of (i) for each advance, 80% of the purchase price of such equipment, and (ii) for all advances $2,000,000. No advances were made under Specific Advance Facility C;

---

[2]     "**Borrowing Base**" means the sum of (a) 80% of the Eligible Accounts and (b) the lesser of (i) $3,500,000 and (ii) 30% of Eligible Inventory (as such terms are defined in the Credit Agreement).

Specific Advance Facility D: provides for discretionary advances by Comerica to enable the Debtors to acquire equipment to be used in their businesses in a maximum amount of (i) for each advance, 70% of the purchase price of such equipment, and (ii) for all advances $500,000; and

Term Loan: principal amount of $6,000,000.

16.    The credit facilities provided under the Credit Agreement mature at different times, as follows:

Revolving Credit Loans: June 1, 2011;

Specific Advance Facility Advances: May 5, 2012;

Specific Advance Facility B Advances: November 30, 2013;

Specific Advance Facility C Advances: June 1, 2014;

Specific Advance Facility D Advances: November 30, 2014; and

Term Loan: May 5, 2011.

17.    As security for the advances made under the Credit Agreement, the Debtors have pledged all of their respective personal property, including accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods (including fixtures), instruments, inventory, investment property, letter of credit rights, money, intellectual property and all proceeds of the foregoing.

18.    To secure the Mortgages, Julius has granted Comerica a Deed of Trust on real estate located at 6680 Surrey Street, Las Vegas, Nevada and a Deed of Trust on real estate located at 2180 Parma Lane, Las Vegas, Nevada.  Each of the other Debtors guarantees Julius' obligations under the Mortgages.

**(ii)    Unsecured Debt.**

**(a)    Notes and Debentures.**

19.    As of December 31, 2010, the Debtors are indebted to various parties in the aggregate approximate amount of $438,590.64 pursuant to a (i) $300,000 12% Subordinated Debenture dated November 1, 1989 issued by U.S. Eagle Corp. to Dawn E.

Westphal  (now Dawn Thompson), (ii) a $300,000 12% Subordinated Debenture dated November 9, 1989 issued by U.S. Eagle Corp. to Margaret H. Westphal (collectively, the "**Debentures**"), and (iii) a  promissory note dated December 31, 1998 issued by TCS California to Mark C. Sjobom in connection with the TCS California's 1998 acquisition of the business of Allied Trench Shoring Service, Inc.

20.    The Debentures, which are payable over a 25 year term, are subordinated to all "Senior Debt," which is broadly defined in the Debentures, with certain exceptions not relevant here, as including (i) all obligations and liabilities of the U.S. Eagle Corp. in respect of money borrowed, guarantees of borrowings by subsidiaries, whether secured or unsecured and whether outstanding as of the date of the Debentures or created, incurred, assumed or for which the Debtors otherwise become liable after the date thereof, and (ii) all obligations and liabilities of the Debtors arising in favor of trade creditors or otherwise in the ordinary course of business of the Debtors whether secured or unsecured and whether outstanding as of the date of the Debentures or created, incurred, assumed or for which the Debtors otherwise become liable after the date thereof.

(b)    **Trade Debt.**

21.    In the ordinary course of business, the Debtors incur unsecured trade debt by vendors, suppliers and service providers.  As of the Petition Date, the aggregate amount of trade debt outstanding totaled approximately $2 million.

(iii)    **Equity.**

22.    As discussed above, U.S. Eagle Corp. owns 100% of the equity interests of each of the other Debtors.  The equity of U.S. Eagle Corp. is in turn owned by six individuals or trusts, as follows:

| Shareholder | Number of Shares | Percentage |
|---|---|---|
| Dawn Thompson Trust | 2,179 | 21.43% |
| JJW Trust (James J. Westphal, Jr.) | 3,626 | 35.66% |
| Erik C. Westphal | 810.5 | 7.97% |
| James J. Westphal III | 810.5 | 7.97% |

| Douglas Westphal | 737 | 7.25% |
|---|---|---|
| SKW Trust (Scott K. Westphal) | 2,005 | 19.72% |
| **Total Number of Shares** | **10,168** | **100.00%** |

**E.      Events Leading To These Chapter 11 Cases.**

23.      Although the Debtors' operations remain fundamentally sound, the recent economic downturn led to a decrease in sales across the enterprise.  This decline was particularly noticeable in the TCS business, which is heavily dependent upon road and housing construction.  The decline in business forced the Debtors to borrow additional funds from Comerica under the Credit Agreement and, as of the Petition Date, the Debtors were in an over-advance position of nearly $1,150,000.  The Debtors were unable to repay the over-advance at the aggressive rate sought by Comerica, and the Debtors and Comerica were unable to agree on a repayment schedule that the Debtors' businesses could more readily support.

24.      Based on certain statements made by Comerica and positions taken by it in respect of the over-advance, the Debtors grew concerned that Comerica may take precipitous action (such as sweeping the Debtors' operating accounts), which would cripple the Debtors' businesses.  Moreover, Comerica likely was unaware of the full extent of the over-advance, which heightened the Debtors' concerns about dramatic action by Comerica that would impede operations.  Accordingly, the Debtors took the unavoidable and necessary step of commencing these cases to protect their businesses and assets for all stakeholders.

25.      The Debtors are cautiously optimistic that in the context of a chapter 11 proceeding, they will be able to quickly and efficiently restructure the Comerica debt, rehabilitate their businesses, and maximize distributions to all (secured and unsecured) creditors.

**BASIS FOR GRANTING RELIEF REQUESTED**

26.      Pursuant to section 363(c) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or Court

approval. While the Debtors remain hopeful that Comerica will consent to the use of its cash collateral, its consent has not been obtained at this time.

27.     Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court shall "prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). What constitutes adequate protection is determined on a case-by-case basis. *See In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994); *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection can be provided in a number of ways under section 361 of the Bankruptcy Code, with the focus being to protect a secured creditor from any diminution in the value of its interest in the collateral during the period during of its use post-petition. *See Swedeland*, 16 F.2d at 564-565; *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995); s*ee also In re Cann & Saul Steel Co.*, 76 B.R. 479 (Bankr. E. D. Pa. 1987); *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986) ("Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy."). Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *Swedeland*, 16 F.2d at 564. "Adequate protection" is not defined in the Bankruptcy Code, although section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected. *Id.*; *In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983).

28.     Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by making a cash or periodic payment to the creditor or providing it with a replacement lien. A secured lender is only entitled to adequate protection up to the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *Gallegos Research Group.*, 193 B.R. at 584-85 (citing *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988));

*Cann & Saul Steel*, 76 B.R. at 483.

29.    Through the use of cash collateral, the Debtors will be able to maintain their operations as a going concern post-petition while protecting and preserving the value of Comerica's collateral and the estates' assets.  As discussed above, in order to adequately protect Comerica's interests, the Debtors propose to grant Comerica: (i) replacement liens pursuant to sections 361 and 363(c) and (e) of the Bankruptcy Code, to the extent Comerica's cash collateral is used by the Debtors and to the extent of any diminution in the value of Comerica's collateral, with the same priority in the Debtors' post-petition collateral, and proceeds thereof, that Comerica held in the Debtors' pre-petition collateral; and (ii) weekly interest payments under the Credit Agreement and Mortgages equal to the contractual rate of interest plus 300 basis points.

30.    In addition, the Debtors' assets have a value that exceeds the Debtors' obligations to Comerica, thus providing Comerica with an equity cushion to adequately protect its interests in collateral. The idea that an equity cushion is a form of adequate protection is not novel, and is widely recognized as a legitimate form of adequate protection under section 361 of the Bankruptcy Code.  *See*, *e.g.*, *In re Snowshoe Company, Inc.*, 789 F.2d 1085 (4th Cir. 1986); *In re Monnier Bros.*, 755 F.2d 1336 (8th Cir. 1985)(*dictum*); *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984); *In re Grant Broadcasting of Philadelphia, Inc.*, 75 B.R. 819 (E.D.Pa. 1987).

31.    Through the use of cash collateral, the Debtors anticipate that they will be able to maintain the value of their assets and any equity cushion associated with their assets for the benefit of Comerica, other creditors, and the estates.  Moreover, the use of cash collateral will prevent the abrupt discontinuation of the Debtors' operations, which would adversely affect the Debtors' ability to market and sell their assets and reorganize their businesses through these chapter 11 cases.  Thus, the best way to ensure that Comerica's security interests are not jeopardized is through the use of its cash collateral. *See In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in

determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized."). The Debtors respectfully submit that the protections proposed herein are appropriate to adequately protect Comerica's interests.

32.     Absent the immediate entry of the proposed interim order, the Debtors will be unable to operate in chapter 11, seek a sale of their assets, or reorganize their businesses. Thus, the Debtors respectfully submit that cause has been shown for the entry of the proposed interim order submitted herewith.

33.     Accordingly, the Court should authorize the Debtors' use of the cash collateral in accordance with the budget annexed hereto.

## NOTICE WITH RESPECT TO THE INTERIM ORDER

34.     Pursuant to Bankruptcy Rule 4001(b), the Debtors will provide notice of this Motion and the proposed interim order by mail, fax or e-mail (to the extent practicable) to the (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) the Debtor's twenty largest unsecured creditors; and (vi) Comerica Bank, the Debtors' secured lender. The Debtors respectfully submit that such notice is sufficient and appropriate given the circumstances for the Court to schedule a hearing at which the Debtors can seek the entry of the proposed interim order.

## NOTICE WITH RESPECT TO THE FINAL HEARING

35.     Pursuant to Bankruptcy Rule 4001(b), the Debtors respectfully request that they be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 14 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order entered by the Court, on the (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) the Debtors' twenty largest unsecured creditors; and (vi)

Comerica Bank, the Debtors' secured lender.    The Debtors submit that notice would constitute sufficient notice of the final hearing pursuant to Bankruptcy Rule 4001(b) and Bankruptcy Rule 2002.

36.    The Debtors have not previously sought the relief requested herein from this or any other Court.

37.    The Debtors submit that the Motion does not present novel issues of law requiring the citation to any authority other than that referred to above and, accordingly, no brief is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form submitted herewith, granting the Motion, and granting it such other and further relief as is just and proper.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

_/s/ S. Jason Teele_____
Kenneth A. Rosen, Esq. (KR 4963)
S. Jason Teele, Esq. (SJT 7390)
Vincent A. D'Agostino (VD 0120)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtors and
Debtors in Possession*

Dated:  January 7, 2011
        Roseland, New Jersey

**Exhibit A**

**US EAGLE CONSOLIDATED** *et al* **- DIP**                                    DRAFT - TENTATIVE & PRELIMINARY
**CASE # 11-10392 (NLW)**                                                             SUBJECT TO CHANGE
**INTERIM CASH COLLATERAL BUDGET**

|                                         | BUDGET | | | TOTAL |
| CASH BUDGET                             | 01/09/11 | 01/16/11 | 01/23/11 | BUDGET |
|-----------------------------------------|---------:|---------:|---------:|-------:|
| **Beginning Cash Balance**              | $1,140,095 | $1,100,363 | $1,173,256 | $1,140,095 |
| **Cash Receipts:**                      |          |          |          |        |
| A/R Collections                         | 694,834  | 620,082  | 628,001  | **1,942,917** |
| Rental Income                           | -        | -        | -        | **-** |
| Other: Freight                          | -        | -        | -        | **-** |
| Total Cash Receipts                     | 694,834  | 620,082  | 628,001  | **1,942,917** |
| **Cash Disbursements - Operating:**     |          |          |          |        |
| Wage / Salary Employee Obligations      | 314,859  | 224,988  | 184,817  | **724,665** |
| Sales Commissions                       | -        | 25,000   | -        | **25,000** |
| Vendor Payments                         | 263,126  | 145,477  | 357,067  | **765,670** |
| Insurance                               | -        | -        | -        | **-** |
| Federal/State income taxes              | -        | -        | -        | **-** |
| State Sales Taxes                       | -        | -        | -        | **-** |
| Property Taxes                          | 10,258   | -        | -        | **10,258** |
| Utilities                               | 16,000   | 1,400    | 2,050    | **19,450** |
| Other / Misc                            | 5,000    | 5,000    | 5,000    | **15,000** |
| Total Operating Disbursements           | 609,243  | 401,865  | 548,934  | **1,560,042** |
| Cash Flows From Operations              | 85,591   | 218,216  | 79,067   | **382,875** |
| **Cash Disbursements - Restructuring:** |          |          |          |        |
| Legal Counsel (Lowenstein)              | 105,000  | 75,000   | 50,000   | **230,000** |
| CRO (Traxi)                             | -        | 50,000   | 25,000   | **75,000** |
| Creditor's Comm. Professionals          | -        | -        | -        | **-** |
| US Trustee                              | -        | -        | -        | **-** |
| Total Restructuring Disbursements       | 105,000  | 125,000  | 75,000   | **305,000** |
| **Cash Disbursements - Sr. Secured Lender:** |     |          |          |        |
| Adequate Protection Payments [1]        | 20,323   | 20,323   | 20,323   | **60,969** |
| Total Lender Disbursements              | 20,323   | 20,323   | 20,323   | **60,969** |
| **Cash Flow**                           | **(39,732)** | **72,893** | **(16,256)** | **16,906** |
| **Ending Cash Balance**                 | $1,100,363 | $1,173,256 | $1,157,001 | $1,157,001 |

NOTE:
[1] Adequate Protection Payments estimated as follows:

|                                             | Principal Amount | Interest Rate | Rate Increase | Weekly Estimate |
|---------------------------------------------|-----------------:|--------------:|--------------:|----------------:|
| Pre-Petition Sr. Secured - Revolving Credit | 10,000,000       | 4.25%         | 3.00%         | 13,942          |
| Pre-Petition Sr. Secured - Mortgage         | 3,000,000        | 8.06%         | 3.00%         | 6,381           |
|                                             |                  |               |               | $20,323         |